Scott E. Radcliffe, (CA BAR NO. 278098)
**ALVES RADCLIFFE LLP**
2377 Gold Meadow Way, Suite 100
Gold River, California 95670
T: (916) 333-3375
E: sradcliffe@alvesradcliffe.com

Attorneys for Plaintiff
CHRISTOPHER SADOWSKI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SADOWSKI,<br><br>    Plaintiff,<br><br>V.<br><br>HEBREW NEWS, INC. d/b/a HEBREW NEWS,<br><br>    Defendant. | Civil Action No. 2:23-cv-02454-SK<br><br>**MOTION FOR DEFAULT FINAL JUDGMENT**<br><br>DATE: Friday, July 7, 2023<br>TIME: 8:45 a.m.<br>JUDGE: Honorable Stanley Blumenfeld, Jr.<br>CTRM: First Street Courthouse, 350 W. 1st Street, Courtroom 6C, Los Angeles, CA 90012 |

Plaintiff Christopher Sadowski ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a

Default Final Judgment against defendant Hebrew News, Inc. d/b/a Hebrew News ("Defendant"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.     On April 3, 2023, Plaintiff filed its Complaint in this action.  The Complaint contains a single cause of action for copyright infringement against Defendant. See D.E. 1.

2.     On April 12, 2023, Defendant was served with a copy of the Summons and Complaint in this action.  See D.E. 9.

3.     On May 16, 2023 (following expiration of Defendant's response deadline), Plaintiff filed its Motion for Clerk's Default.  See D.E. 11.

4.     On May 16, 2023, the Clerk entered a Clerk's Default [D.E. 12] against Defendant.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

### I.     Plaintiff's Business and History[2]

4.     Plaintiff is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, the *New York Post, Daily Mail Online, Reader's Digest, USA Today,*

---

[1]     "[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints." DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007); see also Hull v. KG Bellflower, Ltd. Liab. Co., No. CV 21-5220 DSF (RAOx), 2023 U.S. Dist. LEXIS 24400, at *4 (C.D. Cal. Feb. 13, 2023) (same).

[2]     The facts set forth herein are based upon the well-pleaded allegations of the Complaint and the June 1, 2023 Declaration of Christopher Sadowski (the "Sadowski Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

*New York Times, Fox News, CBS News, NBC News, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine*, and *People Magazine*.

5.      For the past nineteen (19) years, Plaintiff has been self-employed as a professional photographer who specializes in photo-documenting ordinary life and the human condition.

6.      Plaintiff travels throughout the New York, New Jersey and Connecticut tri-state area taking photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal.

7.      Using state-of-the-art equipment, Plaintiff creates high-end photography licensed by some of the top publishers in this Country. When commissioned for a job, Plaintiff spends countless hours capturing hundreds of photographs and then processing those photographs to ensure they meet customers' requirements.

8.      Plaintiff maintains a commercial website (http://www.csnyphoto.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

9.      Plaintiff owns the photographs and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To

that end, Plaintiff's standard terms include a limited, one-time license for use of any particular photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

**II.    The Work at Issue in this Lawsuit**

*A.    The First Photograph*

10. In 2021, Plaintiff created a professional photograph (titled "101521immigrants35CS") (the "First Photograph") of immigrants disembarking off a plane at night in Westchester County Airport, capturing what became to be known as "Biden's Secret Flights."  A copy of the First Photograph is exhibited below:



**B.    *The Second Photograph***

11.    In 2021, Plaintiff created a professional photograph (titled "101521immigrants40CS") (the "<u>Second Photograph</u>") of immigrants from the First Photograph forming a line in front of buses.    A copy of the Second Photograph is exhibited below:



**C.    *The Third Photograph***

12.    In 2021, Plaintiff created a professional photograph (titled "101521immigrants43CS") (the "<u>Third Photograph</u>") of one of the buses from the Second Photograph leaving the airport.    A copy of the Third Photograph is exhibited below:

13.     The First Photograph, Second Photograph, and Third Photograph are collectively referred to herein as the "Biden Secret Flights Photographs."

14.     The Biden Secret Flights Photographs were registered by Plaintiff with the Register of Copyrights on December 31, 2021 and was assigned Registration No. VA 2-288-279. A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

**D.     *The Fourth Photograph***

15. In 2021, Plaintiff created a professional photograph (titled "021321stabbing5CS") (the "Fourth Photograph") of New York City police officers investigating the scene where a stabbing occurred at the 207th Street subway station. A copy of the Fourth Photograph is exhibited below:



16.    The Fourth Photograph was registered by Plaintiff with the Register of Copyrights on March 31, 2021 and was assigned Registration No. VA 2-246-656. A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit B thereto.

**E.    The Fifth Photograph**

16.    In 2022, Plaintiff created a professional photograph (titled "070922subwaystabbing9CS") (the "Fifth Photograph") of New York City police officers standing outside the entrance of an Uptown Manhattan subway station where a fatal stabbing occurred.  A copy of the Fifth Photograph is exhibited below:



### F.    The Sixth Photograph

16.    In 2022, Plaintiff created a professional photograph (titled "100622stabbing28CS") (the "Sixth Photograph") of New York City police officers investigating the 176th Street and Jerome Avenue subway station where a fatal stabbing occurred.  A copy of the Sixth Photograph is exhibited below:



17.    The Fifth Photograph and Sixth Photograph were registered by Plaintiff with the Register of Copyrights on December 31, 2022 and was assigned Registration No. VA 2-334-676.   A copy of the Certificate of Registration pertaining to the pertaining to the Fifth Photograph and the Sixth Photograph is attached to the Complaint as Exhibit C thereto.

18.    The Biden Secret Flights Photographs, Fourth Photograph, Fifth Photograph, and Sixth Photograph are collectively referred to herein as the "Work."

19.    Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

**III.    Defendant's Unlawful Activities**

16.    Defendant is a news platform serving the Israeli community living in the United States and publishes its news articles in Hebrew.

17.    Defendant advertises/markets its business primarily through its website        (http://www.hebrewnews.com/),        social        media        (e.g. https://www.facebook.com/hebrewnews/), and other forms of advertising.

20.    On January 2, 2022 (after Plaintiff's above-referenced copyright registration of the Biden Secret Flights Photographs), Defendant published the Biden Secret Flights Photographs on its website in connection with an article titled "New York lawmakers in a letter to Biden: "Immediately stop infiltrators' flights

from the southern border to the state" (at https://hebrewnews.com/article/45453):



21.    On October 12, 2022 (after Plaintiff's above referenced copyright registration of the Fourth Photograph and within the 3 month window between first publication and Plaintiff's above-referenced copyright registration of the Fifth Photograph and Sixth Photograph), Defendant published the Fourth Photograph, Fifth Photograph, and the Sixth Photograph on its website in connection with an article titled "Record in random murders ":" at every station, neighborhood, and hour the New York subway becomes a dangerous bet – and the experts find it difficult to explain" (at https://hebrewnews.com/article/50387):



22.    True and correct copies of screenshots of Defendant's website, displaying the copyrighted Work, are attached to the Complaint as Exhibit D thereto.

23.    Defendant is not and has never been licensed to use or display the Work.  Defendant never contacted Plaintiff to seek permission to use the Work in connection with its business or for any other purpose.

24.    Defendant utilized the Work for commercial use – namely, as the photos included in two of its articles.

25.    Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

26.    Through his ongoing diligent efforts to identify unauthorized use of his photographs, Plaintiff discovered Defendant's unauthorized use/display of the Biden Secret Flights Photographs in March 2022 and subsequently discovered the unauthorized use/display of the Fourth Photograph, Fifth Photograph, and the Sixth Photograph in February 2023. Following Plaintiff's initial discovery, Plaintiff notified Defendant in writing of such unauthorized use.  To date, Plaintiff has been unable to negotiate a reasonable license for the past/existing infringement of his Work.

27.    Following Plaintiff's discovery of Defendant's infringement, Plaintiff

retained undersigned counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express) one (1) infringement notice to Defendant to notify it of the impermissible use. Thereafter, Plaintiff (through counsel) made multiple attempts to communicate with Defendant (via e-mail and telephone) in an effort to amicably resolve this matter pre-suit, yet each of those communications were ignored.

28. Following the above-described attempted communications, Defendant has failed to respond in any meaningful way.

## **ARGUMENT**

### I.    **Applicable Legal Standards**

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2).

The Court need not make detailed findings of fact in the event of a default judgment. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). The general rule is that, upon entry of a default, well-pleaded allegations in the complaint regarding liability are deemed true. Geddes v. United Financial

*Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Factors the Court should consider in evaluating a motion for entry of default judgment include: "(1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## II.    The *Eitel* Factors Weigh in Favor of Granting Default Judgment

### A.    *Prejudice to Plaintiff if Default is Not Granted*

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered.  Here, absent entry of a default judgment, Plaintiff will be prejudiced as it will be without recourse with respect to Defendant's conduct.  *See Marohn v. Qingjun Yu*, No. 1:22-cv-01070-ADA-SAB, 2022 U.S. Dist. LEXIS 233449, at *15 (E.D. Cal. Dec. 29, 2022) ("If default judgment is not entered, Plaintiff is effectively denied a remedy for the violations of his copyright as alleged, until such time as the Defendant in this action decides to appear in the litigation, which may never occur.").

### B.    *The Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The second and third <u>Eitel</u> factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  In doing so, the Court looks to the complaint to determine if the allegations contained therein are sufficient to state a claim for the relief sought.  <u>See</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).  Here, Plaintiff brings a claim of copyright infringement under 17 U.S.C. § 501, which allows the owner of a copyright to institute an action against an infringer of that copyright.

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a).  Copyright infringement claims have two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  <u>Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC</u>, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)).

### 1.    Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the

certificate." 17 U.S.C. § 410(c).  When the plaintiff presents such evidence, the burden shifts to the defendant to "rebut[] the facts set forth in the copyright certificate."  United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011).  Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.  By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2.    *Defendant Copied the Work*

The second element of a copyright infringement claim, copying, may be established by showing the defendant (1) had access to the work, and (2) the two works are "substantially similar" in idea and expression.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000); see also Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 984-85 (9th Cir. 2017) ("If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work.").

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work.  Defendant's default further constitutes an admission as to such copying.  There is no factual or subjective issue of "substantial

similarity" here as Defendant copied and published duplicate images of the Work.

Thus, Defendant undisputedly copied Plaintiff's copyrighted work.

### C.    *The Sum of Money at Stake in the Action*

The sum of money at stake in this action also weighs in favor of granting default judgment. As set forth in detail below, Plaintiff seeks $63,000.00 in statutory damages with respect to Defendant's copyright infringement of the Work. The amount being sought is far below the $150,000.00 maximum that could be available to Plaintiff if it advanced a theory for recovering such amount. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Plaintiff submits that the amount of damages being sought herein – which falls far below the statutory maximum penalty – is not an excessive amount of money in light of the allegations contained in the Complaint. See, e.g. Marohn v. Qingjun Yu, No. 1:22-cv-01070-ADA-SAB, 2022 U.S. Dist. LEXIS 233449, at *19 (E.D. Cal. Dec. 29, 2022) (holding that fourth Eitel factor favors entry of default judgment as $15,000.00 in statutory damages was not excessive or unreasonable for copyright infringement of single poster); Corson v. Atherton, No. 2:18-cv-01304-CAS(PLAx), 2020 U.S. Dist. LEXIS

83858, at *7 (C.D. Cal. May 11, 2020) (holding that fourth <u>Eitel</u> factor favors entry of default judgment as $30,000.00 in statutory damages for infringement of single photograph "is not so large or unreasonable so as to preclude the entry of default judgment"); <u>Loiseau v. Reel Network LLC</u>, No. 2:17-cv-08998-SVW-SS, 2018 U.S. Dist. LEXIS 226860, at *7 (C.D. Cal. July 26, 2018) (holding that fourth Eitel factor favors entry of default judgment as $30,000.00 in statutory damages was not excessive or unreasonable for copyright infringement of single photograph).

### D.    *The Possibility of a Dispute Concerning Material Facts*

The next <u>Eitel</u> factor considers the possibility of a dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged copyright infringement.  This factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.  <u>See, e.g.</u> <u>DirecTV, Inc.</u>, 503 F.3d at 851; <u>see also</u> <u>Hull v. KG Bellflower, Ltd. Liab. Co.</u>, No. CV 21-5220 DSF (RAOx), 2023 U.S. Dist. LEXIS 24400, at *4 (C.D. Cal. Feb. 13, 2023) (same).

### E.    *Whether the Default Was Due to Excusable Neglect*

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

As discussed above and evident by the docket, Defendant was properly served via personal service on an employee in charge and authorized (Tova Carney).  See D.E. 9.  Further, Plaintiff (through undersigned counsel) attempted contact with Defendant pre-suit, to which Defendant did not respond. The defendant had every opportunity to appear in this action and proffer a defense.  It chose not to do so.  Accordingly, this Eitel factor favors entry of default judgment.

### F.    *The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, Defendant's failure to appear has made a decision on the

merits impossible at this juncture. Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in the Complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the policy favoring decisions on the merits does not preclude entering default judgment against Defendant under these circumstances.

## III. Willfulness

Copyright infringers are subject to increased liability if the infringement is willful. See 17 U.S.C. § 504(c)(2). "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 991 (9th Cir. 2017)

(alteration in original) (quoting Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012)).  "[E]vidence that notice had been accorded to the alleged infringer… is perhaps the most persuasive evidence of willfulness."  Wash. Shoe, 704 F.3d at 674 (quoting Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227 (7th Cir. 1991)).

"Where the defendant has defaulted, willful copyright infringement is proven."  Globe Ent. & Media, Corp. v. Glob. Images USA, No. 2:20-CV-11630-CAS, 2022 U.S. Dist. LEXIS 123358, at *15 (C.D. Cal. July 11, 2022) (quoting Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007)); see also Reiffer v. Shearwater Pac. Capital Mgmt. Llc, No. 18-cv-06053-JSW (RMI), 2020 U.S. Dist. LEXIS 227579, at *23 (N.D. Cal. May 13, 2020) ("Allegations of willful infringement are deemed to be true on default."); Harrington v. Equity Asset & Prop. Mgmt., No. 3:18-cv-00216-GPC-NLS, 2020 U.S. Dist. LEXIS 6105, at *24 (S.D. Cal. Jan. 13, 2020) ("Allegations of willful infringement are deemed to be true on default.").

Here, the Complaint alleges that Defendant's conduct amounted to willful infringement of the Work.  Defendant's refusal to participate in this lawsuit demonstrates that Defendant had actual knowledge, or at least acted with reckless

disregard, of  the fact that its conduct infringed upon Plaintiff's exclusive

copyrights in the Work.  Indeed, on this date, Defendant still currently infringes

(willfully) the Fourth Photograph, Fifth Photograph, and Sixth Photograph on its

website, demonstrating an utter and complete disregard to Plaintiff's request to

remove the infringing photographs, and the Copyright Act.  See

https://hebrewnews.com/article/50387.

Willfulness is further demonstrated by the inclusion on Defendant's website

of a copyright disclaimer/notice ("Copyright © 2018 Hebrew Party, Inc. All Rights

Reserved").  The inclusion of such disclaimers indicates that Defendant

understands the importance of copyright protection and that it actually owns the

content (including photographs) published on its website.  See, e.g., Bell v. ROI

Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS

127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement

is evidenced by the fact that at the bottom of the webpage on which the Indianapolis

photograph was unlawfully published appeared the following: 'Copyright ©

2017.'  By placing a copyright mark at the bottom of its webpage that contained

Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully

infringed his copyright by claiming that it owned the copyright to everything on

the webpage; <u>John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.</u>,
Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D.
Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership
of Plaintiff's Registered Work by including a copyright notice at the bottom of the
page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a
willful violation….").

Here, Plaintiff took the extra step of notifying Defendant of the initially
discovered infringement pre-lawsuit. Defendant ignored undersigned counsel's e-
mails, Federal Express (which included a draft copy of the Complaint in this
lawsuit and warned Defendant such would be filed), e-mails, and telephone calls.
Defendant's refusal to pay a reasonable licensing fee and refusal to respond to
multiple infringement notices demonstrates that Defendant had actual knowledge,
or at least acted with reckless disregard, of the fact that its conduct infringed upon
Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint,
which are admitted by Defendant's default, establish that Defendant's infringement
of the Work was   willful and deliberate.

**IV.    Plaintiff's Damages**

### A.    Actual Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages for copyright infringement "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal quotations omitted); Goldberg v. Forum Ent. LLC, No. 22-cv-02641-RGK-SP, 2022 U.S. Dist. LEXIS 176914, at *9 (C.D. Cal. Sep. 22, 2022) ("[T]he requested $50,000 is reasonable given that actual damages are often measured by the profits Plaintiff would have earned by licensing the copyrighted work to Defendant."); Jarvis v. K2 Inc., 486 F.3d 526, 533 (9th Cir. 2007) (finding that actual damages are what a reasonable buyer would be required to pay a willing seller for the plaintiff's work.).

As set forth above and in the Sadowski Decl., Plaintiff created the Work pursuant to a Freelance Photographer Independent Contractor Agreement with NYP Holdings, Inc. (the publisher of the New York Post). The New York Post does not pay Plaintiff to license individual photographs created as part of an assignment, but rather pays him an all-inclusive rate for such assignments. Plaintiff retains full ownership of the photographs he creates and makes those photographs available to license to other media outlets and generally to the public.

Plaintiff's recent licensing history with respect to the commercial use of his professional photographs include the following:

| Date | Licensee | Description | Amount |
|------|----------|-------------|--------|
| 7/9/2020 | CBS Broadcasting | Michael Cohen photograph | $1,800.00 |
| 7/9/2020 | Fox News | Michael Cohen photograph | $2,100.00 |
| 10/20/2021 | Fox News | Immigrants arriving on plane | $2,000.00 |
| 10/21/2021 | Fox News | Immigrants arriving on plane | $4,000.00 |
| 10/05/2022 | Trend Micro Inc. | Home Depot Front | $2,000.00 |

The photographs at issue here captured dozens of immigrants being secretly transported and flown into New York. The photographs were utilized by the New York Post (in addition to various other captured by Plaintiff) in an article titled "Biden secretly flying underage migrants into NY in dead of night" (https://nypost.com/2021/10/18/biden-secretly-flying-underage-migrants-into-ny-in-dead-of-night/) that received national print and television coverage. Plaintiff is credited in the article as the author of the Work.

The Work is both extremely rare and valuable (as evidenced by the fact that Fox News paid Plaintiff $2,000.00 and $4,000.00 for a one-time right to re-use the same series of photographs captured by Plaintiff.

Based on Plaintiff's normal licensing rates and the type of use at issue here (online publication), Plaintiff would have licensed the Biden Secret Flights Photographs to Defendant for, at minimum, a $3,000.00 annual license fee. Because Defendant displayed the Biden Secret Flights Photographs from at least February 2022 through April 2022, Defendant would owe Plaintiff at least 1x annual licensing fees (as Plaintiff does not prorate his work) in a total amount of at least **$3,000.00** for the Biden Secret Flights Photographs.

Based on Plaintiff's normal licensing rates and the type of use at issue here (online publication), Plaintiff would have licensed the Fourth Photograph, Fifth Photograph, and Sixth Photograph to Defendant for a $1,000.00 annual license fee, for each photograph. Because Defendant displayed the Fourth Photograph, Fifth Photograph, and Sixth Photograph from at least October 2022 through today, Defendant would owe Plaintiff at least 2x annual licensing fees (as Plaintiff does not prorate his work) in a total amount of **$2,000.00** for each photograph, for a total of **$6,000.00** for the Fourth Photograph, Fifth Photograph, and Sixth Photograph.

Plaintiff further declared that the licensing fees alone do not take into contemplation the  scarcity of the Biden Secret Flights Photographs, which also increases their value in this case.  A scarce image  typically demands a much higher fee than common image. In this case, Plaintiff situated himself in the right place at the right time (based on a tip from a confidential source) to capture a tremendously

newsworthy series of photographs that received national attention. The photographs that Plaintiff captured are scarce and cannot be recreated. Indeed, a Google Images search for "Biden immigrant secret flights" (https://www.google.com/search?q=biden+immigrant+secret+flights&sxsrf=ALiCzsYWbJDPcNI36qngGok0sPAI2XV96g:1670717681667&source=lnms&tbm=isch&sa=X&ved=2ahUKEwj96r2vpPD7AhVCneAKHX5SD6gQ_AUoA3oECAEQBQ&biw=1201&bih=1280&dpr=1#imgrc=-9GXPK-ZoQNjdM) results in very few (if any) relevant photographs that were not captured by Plaintiff on that particular night.

Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) is instructive with respect to calculation of Plaintiff's actual damages:

> Corson believes that the scarcity of this work should also be considered in this Court's evaluation. Corson employed several techniques that she perfected over her career including: "professional strobe lighting to give the photos a polished, yet natural look. Most images were shot on a tripod with custom lighting setups that [Corson's] years of experience shooting homes and interiors has allowed [her] to execute with precision and speed. Selecting the proper lenses and aligning the camera properly is crucial to high-end architectural photography." ECF No. [12-2] at 3. Corson "then spent 2 working days processing the approximately 400 photographs using [her] proprietary adjustments to color, contract, levels, etc.; selected [her] favorites; made individual adjustments to those 92 files; then submitted them along with dozens of video clips to [her]

editor." *Id.* The Court finds Corson's request for a scarcity multiplier of four is appropriate to reflect the fair market value of Corson's Work. *See Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc.*, No. 17-CV-81306-BB, 2018 U.S. Dist. LEXIS 227389, 2018 WL 6519104, at *2 (S.D. Fla. April 23, 2018) (J. Bloom) (applying a scarcity multiplier of six to an infringed work of photography); *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a multiplier of three to five times the benchmark because of the scarcity factor of a stem cell image). Therefore, Corson's actual damages are $19,200.00 (the licensing fee over two years times a scarcity multiplier of four).

Following Corson, Plaintiff's actual damages are calculated by multiplying the lost licensing amount ($3,000.00 for the Biden Secret Flights Photographs) by the relevant scarcity multiplier. Given the uniqueness and scarcity of the Biden Secret Flights Photographs, Plaintiff submits that a scarcity multiplier of **5x** is appropriate here. See, e.g., Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc., No. 17-CV-81306-BB, 2018 WL 6519104, at *3 (S.D. Fla. Apr. 23, 2018) (awarding $54,000 in statutory damages after applying scarcity multiplier of six to licensing fee and multiplier of three due to defendant's willfulness); Ermert v. Boca Dental Supply, LLC, No. 18-81666-CV-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 226572, at *6-7 (S.D. Fla. Mar. 29, 2019) ("I find that Plaintiff's request to apply a scarcity multiplier of five is appropriate to reflect the photograph's fair market value."), and Reiffer v. Legendary Journeys, Inc., No. 8:17-cv-2748-T-35AAS, 2019 U.S. Dist. LEXIS

62401, at *9 (M.D. Fla. Apr. 10, 2019 ("[A] scarcity multiplier of five accounts for revenue lost as a result of Legendary Journeys' unauthorized use of Mr. Reiffer's Sydney Opera House work."). This would result in **actual damages** (which is calculated using the scarcity multiplier of 5x) for the Biden Secret Flights Photographs of $15,000.00, plus $6,000.00 ($2,000.00 each) for the Fourth Photograph, Fifth Photograph, and Sixth Photograph, for a sum total of **$21,000.00.**

Notably, at least one court in the Southern District of Florida recently agreed with Plaintiff's actual/statutory damages calculations in a similar case involving publication of several photographs from Plaintiff's series on immigrants/migrants being transported on secret flights. In Sadowski v. Diverse New Media Corp, No. 22-61380-CIV, 2023 U.S. Dist. LEXIS 21791 (S.D. Fla. Jan. 13, 2023), Judge Singhal found the photographs to be sufficiently scarce to apply the requested multiplier (thus finding $15,000.00 in actual damages for a less-than-one-year use) and then applied a 3x multiplier for statutory damages (thus awarding $45,000.00 in statutory damages). Plaintiff submits that the well-reasoned opinion in Diverse New Media Corp. should be followed here.

Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement. Further, Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly,

Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

**B.    *Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement***

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement. Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages

and award 2x – 3x to properly account for statutory damages.  <u>See, e.g.</u> <u>Serio v. Pregame LLC</u>, No. 2:21-cv-01940-JAD-NJK, 2023 U.S. Dist. LEXIS 14892, at *7 (D. Nev. Jan. 11, 2023) ("In cases involving willfulness, courts typically award two to three times the license fees" as a means to compensate and provide deterrence") (internal quotation omitted); <u>Broad. Music, Inc. v. Opitz</u>, No. 18-cv-01914-JSW (DMR), 2018 U.S. Dist. LEXIS 223993, at *12 (N.D. Cal. Oct. 12, 2018) ("Courts regularly award plaintiffs statutory damages amounting to three times the sum that the defendant would have paid in licensing fees.").  "However, in some cases, including those involving willful infringement, courts make higher awards."  <u>Michael Grecco Prods. v. Enthusiast Gaming, Inc.</u>, No. 19-CV-06399-LHK, 2020 U.S. Dist. LEXIS 231648, at *29 (N.D. Cal. Dec. 8, 2020) (collecting cases awarding five times or more the subject license fee/lost revenue).

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work.  <u>See</u> 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

Given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$63,000.00*** ($21,000.00 x 3) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to

create a strong disincentive against infringers intentionally hiding the profits from

their infringing conduct in the hope of earning more than they can be held

accountable for in actual damages, and to deter future violations of copyright law.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's

actual damages, it is well within the Court's discretion to award substantial

damages to the Plaintiff upon a finding of willfulness. For example, in <u>Corson v</u>

<u>Brown Harris Stevens of the Hamptons, LLC</u>, the court found that willfulness

entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C. §

504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual

damages):

> So first the main issue was whether defendant's
> infringement was willful. I find here willfulness entitles
> plaintiff to the enhanced statutory damages provided by
> 17 U.S.C. Section 504(c)(2). The standard for willful
> infringement is not only knowledge on the defendant's
> part that what it did was infringement but also reckless
> disregard of the practice of protecting creativity, the very
> purpose of copyright. When the plaintiff can
> demonstrate, either directly or through circumstantial
> evidence, that defendant had knowledge that its actions
> constituted infringement, or recklessly disregarded that
> possibility, enhanced statutory damages for willful
> copyright infringement under 17 U.S.C. Section
> 504(c)(2) are appropriate.

> Plaintiff successfully proved that her photograph was
> copyright protected. It's clear that defendant, as a
> sophisticated business, knew there was copyright
> involved and did nothing to check those rights or to clear
> permission to reprint from the photographer.

> I find that the infringement was willful, and I find that
> the conduct of indifference to the rights of others was
> egregious and that the statutory damages should be
> $25,000. There were no actual damages.

Corson v. Brown Harris Stevens of the Hamptons, LLC, 2018 U.S. Dist. LEXIS 248214, at *8 – 9 (S.D.N.Y. Jan. 24, 2018). Corson was a fully litigated case in which, though the Judge found that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long experience not merely compels restitution of profit and reparation from injury but also a desire to discourage wrongful conduct." Id. at * 9 (citing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952)).

## V.    Full Costs are Appropriate

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs, an award of full costs to Plaintiff is appropriate. Accordingly, given the willfulness of Defendant's conduct and refusal to participate in this lawsuit, Plaintiff requests that the Court find that Plaintiff is entitled to recover his costs.

## VI.    Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502.  "Section 502(a) of the Copyright Act specifically provides for injunctive relief in circumstances such as those requiring prevention of continued copyright infringement by a defendant." <u>Sony Music Entm't v. Miernicki</u>, No. 09-CV-8084-PCT-PGR, 2009 U.S. Dist. LEXIS 69865, at *3 (D. Ariz. Aug. 3, 2009). "Injunctions are regularly issued pursuant the mandate of Section 502 in order to protect the public's interest in upholding copyright protections." <u>Luminence, LLC v. Top Lighting Corp.</u>, No. 17cv1110-WQH-BLM, 2017 U.S. Dist. LEXIS 209389, at *9 (S.D. Cal. Dec. 20, 2017).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related

business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff **$63,000.00** for Defendant's infringement of the Work, retain jurisdiction to enforce the Final

Judgment and Permanent Injunction and consider any motion for expenses and costs; permanently enjoin Defendant from infringing activities; and, for any other relief the Court deem just and proper.  A proposed order is filed herewith.

DATED:  June 2, 2023                          **ALVES RADCLIFFE LLP**

                                              By: /s/ Scott E. Radcliffe_____

                                              SCOTT E. RADCLIFFE
                                              Attorney for Plaintiff Christopher
                                              Sadowski

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on June 2, 2023, the foregoing document (including all attachments thereto) was served via US Mail on HEBREW NEWS, INC. d/b/a HEBREW NEWS, 6700 Fallbrook Ave., Unit 149, West Hills, CA    91307    and    via    email    at:    newsdesk@hebrewnews.com; sales@hebrewnews.com; catren@catalyst101.com; mail@hebrewnews.com.

                                              By:  /s/ Scott E. Radcliffe_____
                                              Scott E. Radcliffe, Esq.